So Ordered.

Dated: June 7, 2023



Beth E. Hanan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Pamela Mahler,                                    Case No. 22-21674-beh-13

            Debtor.                              Chapter 13

**DECISION AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO PLAN CONFIRMATION**

The Chapter 13 trustee objected to debtor's proposed amended plan, specifically the provision for direct payments by the debtor to Freedom Mortgage Corporation. Even though 11 U.S.C. §§ 1322(a) and 1326(c) do not prohibit direct payments, the Court may exercise its discretion to require payment via trustee disbursement. For the reasons that follow, the Court sustains the trustee's objection.

## CASE BACKGROUND

The facts of this case are undisputed. On March 26, 2008, the debtor, Pamela A. Mahler (fka Pamela A. Cooper), and her husband purchased a property located at 8717 W. Montana Avenue, West Allis, WI 53227. Claim No. 9, at 12. They both executed a note and first mortgage on behalf of Flagstar Bank dated March 26, 2008. *Id.* After the debtor experienced financial hardship, on December 15, 2014, the parties agreed to modify the loan terms. *Id.* at 19-24. The modification agreement reduced the interest rate to 4.5%. *Id.*

at 21. On May 24, 2019, the mortgage was assigned to Freedom Mortgage Corporation. *Id.* at 18. During this same period, Ms. Mahler and her husband were debtors in a Chapter 13 case, No. 10-34987. They both received a discharge on July 11, 2016, and at that time were current with their regular monthly payments to Flagstar. In the course of that case, the debtors overcame a 2012 motion for relief from stay for missed payments filed by Flagstar, as well as a renewal of that motion. ECF Nos. 34, 51.

The debtor and her husband became tenants in common on the property located at 8717 W. Montana Avenue after their divorce was finalized in August of 2020. Case No. 22-21674, ECF No. 85, at 3. The debtor's former spouse continued to contribute toward the mortgage up until his death in November of 2021. *Id.* His death caused the debtor to fall behind on her mortgage payments and other bills. *Id.* Shortly thereafter, the debtor filed her Chapter 13 petition. ECF No. 1. Debtor has worked for several decades as an inside sales representative. ECF Nos. 18 at 36; No. 67 at 7.

On January 11, 2023, the chapter 13 trustee filed a motion to dismiss based on failure to make payments. ECF No. 71. The debtor objected, asserting that she missed some payments due to technical issues with TFS (online payment system) but that she had resolved the problem. ECF No. 78. The trustee agreed to settle the motion without a hearing. ECF Nos. 81, 82.

On January 23, 2023, the debtor filed a request to amend her unconfirmed Chapter 13 plan. ECF No. 75. The debtor proposes to act as a disbursing agent, making direct payments to Freedom Mortgage Corporation in the amount of $2,211.66 per month. The payments will pay the full secured claim in the amount of $118,632.19 at an interest rate of 4.50%. The amendment further provides monthly payments of $100 to the trustee through August 2024 and $285.69 monthly thereafter to accommodate a 401(k) loan payoff. *Id.* Debtor's unsecured creditors will be paid *pro rata* with available funds, resulting in an estimated total dividend of not less than $2,500. *Id.*

On February 2, 2023, the chapter 13 trustee objected to confirmation of the debtor's amended plan, based on its direct-payment provision. ECF No. 77, at 1. The trustee identified several factors courts consider when allowing direct payments, such as whether a creditor is impaired by the plan, the maturity date of the obligation, and whether the plan alters creditors' rights. *Id*. The trustee argues that Ms. Mahler has asserted no basis for making direct payments, and because the claim is not a long-term debt, this Court should follow 11 U.S.C. § 1326(c) to require "the trustee shall make payments to creditors under the plan." ECF No. 77 at 1. Both debtor and trustee submitted letter briefs supporting their positions. ECF Nos. 85, 86.

## JURISDICTIONAL STATEMENT

This is a core proceeding under 28 U.S.C. § 157(b)(1), (b)(2)(A) and (b)(2)(L). This court has jurisdiction to hear and decide this matter pursuant to 28 U.S.C. § 1334(a), by way of this district's order of reference, entered pursuant to 28 U.S.C. § 157(b)(2)(G) on July 16, 1984.

## DISCUSSION

Debtor, as the plan proponent, has the burden to prove all of the elements of a confirmable plan. *In re Edmonds*, 444 B.R. 898, 902 (Bankr. E.D. Wis. 2010). A bankruptcy court must confirm a Chapter 13 plan if it meets the six requirements of § 1325(a), including that 'the plan compl[y] with the provisions of [Chapter 13] and with the other applicable provisions of this title' and that the debtor 'will be able to make all payments under the plan and to comply with the plan.'" 11 U.S.C. § 1325(a)(1), (6); *Matter of Aberegg*, 961 F.2d 1307, 1308 (7th Cir. 1992). A Chapter 13 plan should contain three basic provisions:

> The plan shall—
>
> (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this

> title, unless the holder of a particular claim agrees to a
> different treatment of such claim; and
>
> (3) if the plan classifies claims, provide the same treatment
> for each claim within a particular class; . . .

11 U.S.C. § 1322(a); *Aberegg*, 961 F.2d at 1309. Another subsection, 11 U.S.C. § 1322(b), identifies optional provisions for inclusion in a Chapter 13 plan. In particular, a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims[.] . . ." 11 U.S.C. § 1322(b)(2).

The Seventh Circuit described the usual plan implementation: "[t]he Bankruptcy Code contemplates that the debtor and/or his employer will typically transmit the specified portion of the debtor's future income to a Chapter 13 trustee charged with disbursing the monies to creditors pursuant to the plan." *Aberegg*, 961 F.2d at 1309, citing 11 U.S.C. § 1326(c); *In re Jutila*, 111 B.R. 621, 624–25 (Bankr. W.D. Mich. 1989) (Chapter 13 trustee's duties under 11 U.S.C. § 1302 include advising and assisting debtors in performance of their plans and in ensuring they begin making plan payments. . . . The primary way a Chapter 13 trustee supervises debtor's performance is by requiring that most, if not all, plan payments be disbursed by the trustee).

But disbursement by the trustee is not mandatory. 11 U.S.C. § 1322(a)(1) requires only that the plan provide for the submission to the trustee of "all or such portion of future earnings or other future income of the debtor . . . as is necessary for the execution of the plan." *Id.*; *Giesbrecht v. Fitzgerald* (*In re Giesbrecht*), 429 B.R. 682, 690 (B.A.P. 9th Cir. April 28, 2010), citing *Cohen v. Lopez* (*In re Lopez*), 372 B.R. 40, 51-52 (B.A.P. 9th Cir. 2008). This subsection gives bankruptcy courts "the discretion to permit debtors to make payment directly to some secured creditors, provided that the plan meets all the confirmability requirements set forth in § 1325(a)." *Aberegg*, 961 F.2d at 1309. *See also*, *Matter of Foster*, 670 F.2d 478, 487 (5th Cir. 1982) (when plan

designated debtor as disbursing agent, bankruptcy court must determine whether debtor will be able to make the payments); *In re Curran*, No. 09-27858-svk, 2009 WL 2591640, at *1 (Bankr. E.D. Wis. Aug. 20, 2009) (noting that in the face of an objection, it is debtor's duty to establish sufficient cause for an exception to the presumption[1] of payments through the trustee) (citations omitted.)

The trustee receives a statutory fee on funds that she receives for distribution pursuant to the Chapter 13 plan, *see* 28 U.S.C. § 586(e)(2), but collects no fee on funds which the debtor may pay directly to a creditor. *Aberegg*, 961 F.2d at 1309.

In determining whether to confirm a plan providing for debtor-direct payments, courts have devised several factors by which to apply their discretion. *In re Perez*, 339 B.R. 385, 409 (Bankr. S.D. Tex. 2006), aff'd sub nom., *Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007); factors also recounted in *In re Curran*, 2009 WL 2591640 at *2. Here, the Chapter 13 trustee relies on ten of the *Perez* factors to support her objection. ECF No. 86, at 1. The debtor primarily relies on five *Perez* factors.

The trustee asserts that factor (1), the degree of Mahler's responsibility toward her creditors, is not a primary consideration because all individuals who file bankruptcy have difficulty managing their debts. ECF No. 86, at 1. The debtor does not address this factor. The Court notes that during her last bankruptcy case, debtor and her then-husband missed some monthly payments to Flagstar/Freedom at two different intervals, but circumstances did not persuade the court to lift the stay in those instances. And in this case, the trustee filed, but resolved, a motion to dismiss where the debtor

---

[1] The Bankruptcy Appellate Panel in *In re Giesbrecht*, 429 B.R. 682, 690 (B.A.P. 9th Cir. 2010), considered that a general requirement, or presumption, that plan payments be disbursed by the trustee was inappropriate, given that sec. 1326(c) contemplates some payments being paid outside a particular plan. It is not necessary for this Court to decide whether a presumption is warranted.

acknowledged missed payments due to trouble with the online payment system. Overall, this factor tips slightly in favor of trustee disbursement.

The trustee contends that the second factor, debtor's reason for filing a Chapter 13 case, weighs against direct payment. She acknowledges the debtor's hardship caused by divorce and then the death of her former spouse, but notes many debtors face similar difficult circumstances leading to financial distress. ECF No. 86, at 1. If, the trustee continues, the debtor's primary goal in filing a Chapter 13 petition is to save some non-homestead real estate, then this factor should disfavor direct payments. Instead, payment records of trustee disbursements to the mortgagee could prove invaluable in the event of a payment dispute between the lender and debtor regarding this non-homestead property. *Id.* at 2. In contrast, the debtor denies filing her Chapter 13 petition in bad faith (and the trustee does not assert bad faith). The debtor notes she did not have significant liabilities until after her ex-husband's death prior. Her primary reason for filing bankruptcy is to address the mortgage debt caused by her former spouse's death. ECF No. 85, at 2. The Court agrees with the trustee that this factor (or factors) weigh in favor of trustee disbursement. The goal of saving the real property is, generally speaking, more likely to be achieved if the trustee disburses the monthly payment and maintains consistent records about those payments. This debtor also has experienced some difficulty in completing payments (see response to motion to dismiss), and therefore the experience of the trustee's office in maintaining systematic records ultimately can benefit this debtor.

The trustee argues that the third factor, the risk of delay associated with trustee disbursement as opposed to the immediacy of direct payment, is not determinative because the plan proposes to modify the loan to Freedom Mortgage Corp. As a result, there is no "due date" for a monthly payment. The debtor does not address this factor. The Court agrees with the trustee that any 'risk of delay' is not determinative and may indeed be minimal.

The fifth factor considers sophistication of the creditor. The trustee concedes Freedom Mortgage Corporation is a sophisticated entity, but asserts

its large size actually risks the improper application of payments in bankruptcy cases. Trustee disbursement of mortgage payments would ameliorate that risk, as her records will show how each payment should be applied. This safeguard would be lacking under the debtor's proposed plan. She points to *In re Gravel*, 6 F.4th 503 (2d Cir. 2021), *cert. denied sub nom. Sensenich v. PHH Mortg. Corp.*, 213 L. Ed. 2d 1047 (June 13, 2022), to demonstrate how even a sophisticated mortgage creditor can disserve debtors by misapplying payments. In *Gravel*, the mortgage company, PHH, incorrectly marked the debtor's mortgage as delinquent, began to add late penalties, and eventually threatened foreclosure. The debtor paid the mortgage through the trustee, who kept records of all payments made. The trustee used his records to compel PHH to apply the mortgage payments correctly as provided by the Chapter 13 plan. 6 F.4th at 508. Here, if the Court were to confirm Ms. Mahler's amended plan and were Freedom Mortgage to misapply any of the debtor's payments, the trustee could not show how each payment should be applied because the debtor, not the trustee, had acted as the disbursing agent.

In contrast, the debtor argues Freedom Mortgage Corporation is one of the largest full-service mortgage lenders in the country with the ability to track the direct payments and seek relief if the debtor defaults. Further, the debtor points out that Freedom Mortgage Corporation has a sophisticated understanding of the bankruptcy process and yet has chosen not to object to direct payments from the debtor.

The Court concludes this fifth factor is not determinative. Both parties agree Freedom Mortgage is a sophisticated entity with regard to lending and to the bankruptcy process. Accepting that this Chapter 13 trustee's office is smaller than the national scope of Freedom Mortgage, that fact might allow closer attention to plan payments and earlier spotting of accounting mistakes. But this difference—and likelihood of error by either entity—is difficult to quantify. Certainly, neither party has offered actual 'error statistics' favoring or disfavoring direct payment. The Court is aware that one commentator has noted that "mortgage lenders and servicers sometimes profess to prefer direct

payments from the debtor because they claim the debtor is more likely than the trustee to remit by the monthly due date in the contract." Keith M. Lundin, *Lundin On Chapter 13*, § 85.6, at ¶ 17, www.LundinOnChapter13.com (last visited April 7, 2023). But this preference may be somewhat cynical. As Judge Lundin continues, it is more likely the "mortgage lenders and servicers prefer direct payments because they know that debtors can't keep track of what they pay and when they pay as well as the standing trustee can, and the result of direct payment will be more failed plans, more post-petition late charges and less likelihood that the debtor will be able to sustain an attack at the end of the case with respect to whether the mortgage arrearages have been cured and the ongoing payments made current." *Id.* By not making a mortgage payment via the trustee, "the 'accounting' from the mortgage servicer's computer will be the only evidence when a direct-payment debtor gets a foreclosure notice a few weeks after discharge at the completion of payments under a direct-payment plan." *Id.*

While Judge Lundin's surmise that lenders prefer direct payments because they consider the debtor's error rate to be high and to facilitate an ultimate foreclosure, the Court is unwilling to put too much weight on this general canvass. Overall, the Court does not find the sophistication of the creditor, in this instance, to be determinative.

The debtor then points to factor (7) and argues that the mortgage is more akin to a commercial debt because it is secured by investment property used for rental purposes. ECF No. 85, at 3. Debtor says she likely will prioritize paying the rental property's mortgage to avoid a cessation of her business operations. *Id.* Conversely, the trustee views the mortgage to be a consumer debt due to the negative cash flow between incoming rent and outgoing expenses. Ms. Mahler receives $1,000 in monthly rent but her proposed mortgage payment is $2,211.66/month for the next five years. She holds no

equity in the property after the first and second mortgages.[2] Taken together, the trustee says these facts suggest debtor is seeking to retain the property for a consumer, not commercial, purpose.

In *Perez*, the court reasoned a debtor would be more inclined to repay a commercial debt "for fear of having financing cut off and thereby forcing a shutdown of the business operations." *Perez*, 339 B.R. at 413. Another court considered that where the debt is in the name of the individual debtor—there, a car loan—and there was no evidence of the debt being anything but personal, the record suggested that the debt should be paid through the trustee. *In re Hickey*, 618 B.R. 314, 324 (Bankr. N.D. Ala. 2020). This Court agrees with the Chapter 13 trustee that the starkly negative cashflow expected from this rental property over the course of debtor's plan suggests that debtor seeks to pay a consumer debt, and not continue a business strategy. Moreover, the mortgage debt is in debtor's individual name, and her primary source of revenue is her employment as an inside sales representative, not rental income. Overall, this factor favors trustee disbursement.

Factor ten considers the number of payments to be made. In *Aberegg*, the plan provided for mortgage payments to extend beyond the life of the plan. Consequently, the Seventh Circuit found it would be inefficient to require the debtors to make payments to the trustee during the plan but then arrange for direct payments thereafter. *Aberegg,* 961 F.2d at 1310. Here the trustee asserts the opposite is true—the Freedom Mortgage loan will be paid in full over the plan period. Consequently, it is the type of a debt that should be paid via the trustee. The debtor does not address this factor. The Court acknowledges the efficiency argument, with the commensurate greater likelihood of achieving debtor's goal to pay off this mortgage, and so agrees that this factor weighs in favor of trustee disbursement.

---

[2] The second mortgage is being treated as a non-priority unsecured claim per the stipulation filed in court document 47. ECF No. 47.

Factor 11 asks whether a direct payment would tend to hinder a trustee's ability to perform her duties. Ms. Mahler has offered to provide the trustee with ongoing proof of direct mortgage payments. The trustee concedes this proposal may seem helpful on its face, but practically would require the trustee to perform additional work by monitoring the payments (i.e., contacting Freedom Mortgage regularly) yet without receiving her percentage fee. The trustee also asserts this arrangement would impede her ability to perform other standing duties. The trustee notes that the collateral is not the debtor's principal residence and as such the protections of Rule 3002.1 do not apply. Consequently, having the trustee receive and monitor the payments is a superior way to measure the debtor's accountability, instead of reviewing check copies from the debtor. While it is understandable that a debtor would want to save administrative fees payable to the trustee, in this instance it would seem to come at an unfair cost—uncompensated extra work for the Chapter 13 trustee and possible delay in performing other trustee duties (likely affecting debtors beyond Ms. Mahler). The Court agrees with the trustee that this factor favors trustee disbursement.

Factor 12 weighs any unique circumstances. The trustee asserts that if any unique circumstance exists in this case—and the debtor identifies none—it is that the non-priority unsecured claims are being denied payment because Ms. Mahler is accelerating payments to the mortgage creditor. Invoking 11 U.S.C. § 1322(b)(2), the debtor proposes to modify the mortgage by accelerating the payment timeline and increasing the monthly amount from $1,292.63 to $2,211.66. The trustee argues this $919.03 monthly difference represents funds that could be used to pay general unsecured claims. While the trustee does not contend that Ms. Mahler has proposed the accelerated mortgage payments in bad faith, the Court agrees that debtor's election to speed up payments on this loan is not a special circumstance favoring direct payments. *See also, In re Curran*, 2009 WL 2591640, at *2 (explaining that debtor's unique arrangement with car lender for financing was not of such significance to warrant direct payments).

Only the trustee asks the court to weigh *Perez* factors 20 and 21, which look at the trustee's salary and concerns for the U.S. Trustee system. The trustee acknowledges that a single case allowing direct payments is not determinative (of her salary or of system abuse), but she reasons that a tipping point could be reached if the courts permit direct payments more often. The trustee argues that such circumstance would affect the trustee's salary negatively and could result in the trustee not being able to perform her duties properly. She considers that the funding for her office and staff, including employee salary and benefits, office space, equipment, and insurance, are more important than supporting her own salary. The Court agrees that any one case should not undo the U.S. Trustee system, and likely would mean a relatively small dip in this trustee's funding. But the Court also agrees that an accretion of direct-pay plans could not only pose plan-completion risk for the individual debtors, but could weaken the Chapter 13 infrastructure, such that even debtors with trustee-disbursal plans suffer from diminished trustee services. As these factors rely on logic and not hard evidence, the Court finds they tilt only somewhat in favor of trustee disbursement.

In sum, considering the *Perez* factors relevant to this debtor's history and proposed amended plan and mindful that the Code does not prohibit direct payments by debtors under a plan, the Court finds that disbursement of payments by the trustee to Freedom Mortgage offers a greater likelihood of achieving the debtor's goals for her Chapter 13 plan. This approach, to a lesser extent, also avoids any incremental undermining of the trustee's ability to serve this and other debtors.

Therefore, it is HEREBY ORDERED that Trustee's objection is SUSTAINED. Debtor shall submit an amended plan in conformity with this decision within 30 days.

#####